Good morning, and may it please the Court. My name is James Friedhofer, and I represent the defendant James Sanders. Mr. Sanders is also present today. I'd like to reserve three minutes for rebuttal, if I may. And in the remaining time, I would like to address the presence of the fourth requirement of quorum novus, which is that the error be of the most fundamental character. Also, I hope to entertain any questions that the panel may have. Regarding this fourth element, it's an undisputed fact that there was an error in this case. The March, excuse me, the May 29th, 28th document should have never been created, should have never been placed in the court file, and should have never been part of the record in the direct appeal that was presented to this Court. That seems to be undisputed. The parties differ quite a bit in their briefs as to whether there was any prejudice from this. And the government even goes as far as to say because there was no prejudice, there wasn't even any wrong. We note that in Judge Schroeder's opinion in the Hirabayashi case, there was a footnote that was dropped that suggested that demonstrating prejudice from the error may not even be a requirement for quorum novus belief, relief. But regardless, we've alleged that there are three demonstrable bases for prejudice in this case. The first is this error, which put this wrong document before this Court in the direct appeal, prevented a key argument from being made in the direct appeal. Secondly, we argue that it's a fundamental error in and of itself when such an important document, which is required by this Court's rules, be placed in there which did not describe accurately the way that the indictment was at the end of the trial. Third, the point is that this error also prevented the timely discovery and also argument of an ineffective assistance of counsel point at that time. Counsel, if we reversed every case where there was a mistaken document put in the record, we would send everyone else, everyone out on searches through records and we'd be here for 100 years. So what makes this so different? First of all, I agree. I don't want that type of a rule either. We don't want collateral attacks going on into the future for all these cases. What makes this different is this was no mere technical error. This is not a ministerial error. This is not that some procedural requirement that was not very important was not met. This was a very, very central and important document to this Court's review. Because it's the indictment? Is that your argument? Not just because it's the indictment, because that's what this Court relied upon to determine what was the nature of what was charged at the time that the case went to the jury. And the argument that was to be made was by the time that the co-defendant was dismissed and by the time that the conspiracy charge was dismissed, it was an open question as to whether what the nature of the charge was against Mr. Sanders regarding the mail fraud. Now, the mail fraud claims were the only accounts, were the only ones that remained. There were no accusations that Mr. Sanders actually did the mailing. It was that he caused the mailing to be done. Well, but in terms of what the jury was instructed on and how the case was argued and the verdicts that were prevented to the juries, looking at all of this, I realize that Mr. Sanders is arguing that they were unclear and that how has he demonstrated that there's any real possibility that the jury was confused and that he was convicted of something that he wasn't charged with? Okay. That's a good question. Let me give you a prime example. Number one is with these mail fraud counts where they're alleging that he did not do the mailing, there had the government had the burden of showing some nexus between Mr. Sanders and the mailing. This nexus in the original complaint was in the conspiracy count, and it talked about this fraudulent scheme or artifice. As a matter of fact, the exact language is that Sanders and Wright, who was the co-defendant, together with others known and unknown to the grand jury, unlawfully and knowingly combined, conspired and agreed among themselves to devise a scheme and artifice to defraud. That was read to the jury at the very beginning when all those counts were in. Once the conspiracy count was dropped and dismissed and once Mr. Wright was dismissed, the term scheme that had been placed in the juror's mind was still argued. They still argued during the closing argument. They related to this scheme, a scheme, a scheme, a scheme. Yes. Did the jury convict him of anything that he wasn't ultimately charged with? The jury convicted of mail fraud counts, and he was charged with all of those counts. That's correct. Okay. However, the nexus between, you know, what the government had to show and what was done, that nexus was not clear as to whether the scheme that was argued to the jury involved only the actions of Mr. Sanders or still contained the actions of others known or unknown to the grand jury. I guess I'm just struggling with it. It appears that the instructions were correct. They were given, the jury was given the correct instructions. They were given the correct verdict forms, and he wasn't convicted of the charge that was dismissed. You know, they didn't somehow accidentally do that. Yes. And the evidence was the evidence. And there was nothing, you know, we're not saying that there should have been, and in the final argument, the argument was as to the remaining charges, correct? That's correct. Let me give you an example that perhaps illustrates my point better. In the count that the jury convicted on, which they knew was count three, but then was referenced as count four in this Court's opinion, that involved a policy change request that had been sent by somebody else other than Sanders. It involved a case, a company called Cross Country and a woman named Patty Haggerty. Now, during closing argument, the government alleged that Ms. Haggerty was involved in some scheming of her own. You'll find on the excerpts of record, page 141, where they say that, well, Ms. Haggerty knew better than to try to send this document to a local broker and had gone 300 miles away to do that. So that suggests somehow that Ms. Haggerty had some role in this scheme. Now, if there was no conspiracy count, could the jury convict, based upon some scheming done by Ms. Haggerty, that somehow tied Mr. Sanders in, or could it only convict on the things that Mr. Sanders did? It seems like that at the time of the closing argument, they were arguing multiple people. But if the conspiracy claim was not there, it was no longer part of the case, was that proper? And that's the argument that he would have made, that these arguments that other people might have done something. How does that depend on what document was filed? Well, that's a very good question. And the document, when the court looked, when Sanders says that there's a problem in that what was once alleged of this scheme was no longer present in the case by the time the case went to the jury, this court could go back for itself and say, okay, well, let's look at the indictment, the final indictment, which we require to be put in the record, and find out what was there. Did we say something wrong in the prior decision? Pardon me? No. Well, actually the merits, did we, did anything go wrong? Yes. I believe that there is, because there was an assumption in the opinion that all of these things, all these mailings were pursuant to a fraudulent scheme, pursuant to the scheme. And the scheme, when you go and look at the first indictment before the conspiracy count was dropped, included all these other people. But in reality, by the time this court went to that, the scheme didn't involve the other people. It should have only involved Mr. Sanders. But when the court ---- We had the record that showed the granting of the motions and all of that. Actually, the record, as we've shown you in the briefing, was not very clear on that the state of the indictment or the charges were after that point. But I believe that the requirement of this court for the final ---- But the jury was properly instructed. Everybody in the courtroom knew what was going on. Well, our argument is the jury was not properly instructed regarding the scheme. Okay. It's the scheme which is the ambiguity. And when this court wanted to determine what is the scheme, well, there's a very good reason why the court rules have that final indictment as part of the record. And that's so you could go there. Okay. You've got about ten seconds. Okay. And I'll reserve the rest of the time for rebuttal. Thank you. You don't have any time. He's got three seconds. I'll give him a little time. Three seconds. You don't have ---- It's fine. It's fine. He'll give you a little time. Thank you. Good morning, Your Honors. May it please the Court, Phil Ferrari for the United States. I want to start by stating that Appellant is seeking a remedy that the Supreme Court has called extraordinary and that this Court has called highly unusual and that it is meant to address only errors in the most fundamental character. And that is not what the Appellant is alleging here. He's not alleging that his conviction is not supported by the evidence or is somehow contrary to law. He's arguing about the date on the indictment. And as he just pointed out, the only way that that really matters is if somehow the date on the indictment led this Court to the conclusion that the indictment, which was in the excerpt of record, somehow included all the charges and only the charges which were submitted to the jury when they made their decision. But there's no chance that this Court suffered from that misapprehension. In their direct brief on appeal, the Appellant pointed out the fact that the Rule 29 motion had been granted for defendant right and that the Court had granted the government's motion to dismiss the conspiracy count. In the government's brief on direct appeal, we made the same point. We even pointed out that the reason why the numbered counts that were referred to in the briefs differed from the numbered counts in the verdict form is because the conspiracy count had been dismissed before the case went to the jury. Moreover, as the Court pointed out, closing arguments that were made to the jury, jury instructions which were read to the jury, the verdict form, all of these things were before the Court. All of these things were concerned solely with the mail fraud counts. None of them mentioned conspiracy. Well, but I think Counsel for Appellant talks about how other names of people that were talked about in the closing arguments that had been the people that would have been the co-conspirators had the conspiracy trial gone. Correct? That's correct, Your Honor. All right. Is that a fundamental error? It is not. Why not? Well, there's nothing preventing the description of the scheme in the indictment from referring to acts by other people other than the defendant. What's key is that the jury instructions direct the jury to the fact that the defendant can only be held liable for mailings that he caused in furtherance of that scheme. And that instruction was given in this case, Your Honor. The defendant claims that the fact that this or the appellant makes the claim that this Court might have had this misapprehension affected his ability to make effective appellate arguments to the fact that perhaps the jury was confused about this. The jury, the record shows, was not confused about the fact that the mail fraud counts were the only things pending before them. That scheme was set out in the indictment. It was read to the jury in argument. Counsel for the Government focused on that scheme, described each mailing, and was very clear with them that that was all that was before them at that point. Counsel said, What you have to remember is that defendant is on trial for what he is charged with and nothing else. What is he charged with? He's charged with mail fraud, he said. He repeated that later, saying, It's causing the mails to be used to defraud to obtain money or property. That's the charge he's on trial for. That's all he's on trial for. Later he said, This is only a mail fraud case at this point. Well, the conspiracy, but you started as you had a conspiracy count, right? That's correct, Your Honor. Would you have been able to get in all the same evidence if you had started in the same place that you ended up? You see what I'm saying? If it had just been mail fraud from the start, would you have been able to get in the expansive amount of evidence that you got in at the end of the day? The majority of the, with the exception of the paragraph that's labeled conspiracy that has the formal charging language for conspiracy. With the exception of that paragraph, there's only two other paragraphs which were not incorporated by reference into the scheme for the mail fraud counts. So I believe that the majority of that would have been able to come in. I'm not aware of anything that the appellant has pointed to, which they have said was incorrectly admitted. Furthermore, if that turned out to be a problem, I think that that would have consequences in a number of cases. Rule 29 motions are made as a matter of course in criminal trials. And it often happens, as it happens here, that they are granted only in part. The remainder of the charges are allowed to go to the jury. And when that happens, there's no requirement that the government has to go back and create a new final redacted document. There's no requirement that the indictment be read to the jury or submitted to the jury, both those decisions. You just didn't prove all the charges. I'm sorry, Your Honor? You just didn't prove all the charges. Well, in this case, we did not prove the conspiracy charges. That's correct. That's correct. But counsel seems to be indicating in his briefs that there's some sort of requirement for a document that reflects only the charges that are given to the jury. There is no such requirement. Counsel states repeatedly in his reply brief that the problem here is that the district court was involved in creating a false document. This is not a false document. It may be that there should have been an April 23rd date on the indictment rather than May 28th, but there's no dispute that this is the indictment that was presented to the court on April 23rd as the last indictment the government gave. There's no dispute that this is a document that Judge Carlton said should be filed. It's not a false document. Finally, we stated in our brief that the appellant had the opportunity to make these claims earlier. And, in fact, we could have been stronger. The appellant did make these claims earlier. In the direct appeal, after all of the appeals had been, the opening briefs had been filed, the appellant filed a number of motions. One of those was a petition for a writ that would require the district court to prepare and submit a final indictment. This court then issued, after that was filed, its memorandum of opinion, which affirmed the conviction. The appellant then filed an emergency motion saying, you need to consider my previous motions, including this motion that would require the district court to prepare a final indictment. This court then issued an order which stated that on September 24th, 1999, that that motion was denied because the motions it referenced, including the motion for a final indictment, had been considered and rejected by the panel and the memorandum disposition. This is all pretty thoroughly briefed, isn't it? Yes, Your Honor. If the court has no further questions. There don't appear to be any. Thank you, Your Honors. Mr. Friedhofer, is there anything really important you want to say very briefly? Your Honor, I will just conclude that the error, this was an error. It wasn't just a date change. There was a purpose for that date change. And we think that the purpose of the date change does impact upon what its effect was in the direct appeal. And so we'll submit on that. Before you sit down, I'd like to ask, how long is your client in for? My client was incarcerated for a little over three years, I believe. He's been out for years. And he had a period of supervision of about three years after that. And I see the district court issued an order. I mean, he's been flooded with petitions. Yes. How long have you been handling those? I've just come on to the case after, a few months after the order had been, after the document had been taken out of the order. Have you been filing all these requests for the district court? No, Your Honor. Who's been doing that? Mr. Sanders has been doing that, per se. And when did he hire you? That would have been after the May 28th document had been removed by the district court. What date is that? That would have been in March of two years ago, 2006. You've been representing him since? Since about the summer of 2006. And I concede, Your Honor, that there were a flood of frivolous appeals, you know, petitions and things like that in this case. The only thing that in my mind makes these arguments have some ground is the action that was taken by the court in changing the record. So I am troubled by the previous filings as well.  Thank you, Your Honor. The case just argued is submitted for decision. The next case, Tillman v. Hubbard, is submitted on the briefs.
judges: Schroeder, Noonan, Callahan